IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INNOVATIVE ENGINEERING & CONSULTING CORP., | ) Case No.: 1:05-CV-00764 ) |
| Plaintiff, | ) Judge: Kathleen M. O'Malley ) ) Magistrate Judge: Patricia A. Hemann |
| v. | ) ) **MEMORANDUM IN OPPOSITION TO** |
| HURLEY & ASSOCIATES, INC., et al. | ) **MOTION OF THOMAS J. HURLEY TO** ) **DISMISS** |
| Defendants. | ) |

I.  INTRODUCTION

This Court has jurisdiction over the person of Thomas J. Hurley ("Hurley") based on his contacts with Ohio that give rise to Count VI of the Complaint of Innovative Engineering & Consulting Corp. ("IEC"). Alleging falsely that he is a co-inventor of IEC's products, Hurley has made numerous threats regarding, and claims to, IEC's intellectual property. Those threats were directed into Ohio at Ohio residents and an Ohio corporation and concerned Ohio-based inventions. It is these contacts that give rise to IEC's claim for declaratory judgment.

Instead of addressing Hurley's numerous contacts with Ohio committed in his individual capacity as an alleged co-inventor, Hurley's Motion to Dismiss instead relies on the irrelevant fiduciary shield doctrine. Hurley ignores the long-arm and due process analyses that support this Court's exercise of jurisdiction over his person and apparently fails to recognize that Federal Circuit authority controls this inquiry. When the proper analysis and the proper law are applied, it is clear that the Motion to Dismiss should be denied.

{AEG0565.DOC;4}

## II. BACKGROUND

IEC is an Ohio corporation with its principal place of business in Cleveland, Ohio. See Affidavit of Richard Pettegrew ("Pett. Aff."), ¶ 2. All of its employees, including CEO Richard Pettegrew and CFO Richard Stepnowski, are Ohio residents. Id. at ¶ 3. The company is engaged in the design, manufacture and sale of thermal imaging (or infra-red) products with military, surveillance, industrial and commercial applications. Id. at ¶ 4.

In July 2000, Richard Pettegrew was conducting research on behalf of Case Western Reserve University at Cleveland, Ohio's NASA Glenn Research Center when he first spoke with Tom Hurley. Id. at ¶ 5. Thereafter, Hurley sold infra-red cameras to NASA in Cleveland. Id. at ¶ 6. Later, in early 2001, Hurley and his company, Defendant Hurley & Associates, Inc. -- a company that Hurley founded and for which he is CEO, sole shareholder and admittedly the "sole decision-maker" -- engaged IEC to supply them with controllers for the operation of Hurley's cameras. Id. at ¶ 7; Affidavit of Richard Stepnowski ("Step. Aff.") at ¶ 6; see also Exhibits E (bio from website of Hurley & Associates, Inc. and HurleyIR, Inc., stating Hurley is CEO and founder) and F (Dunn & Bradstreet Report stating Hurley is 100% shareholder of Hurley & Associates, Inc.).

For the next four years, Hurley submitted purchase orders to IEC's Cleveland, Ohio, office for controllers and other infra-red components. Pett. Aff. at ¶ 8. After accepting the purchase orders, IEC would then manufacture and deliver its products to Hurley for his integration with components he purchased from other suppliers. Id. Following his integration, Hurley sold the completed infra-red camera systems to resellers and end-users at a profit. Id. Since beginning their relationship in 2001, IEC and Hurley have conducted approximately 625 transactions, with over $2.3 million paid by Hurley to IEC. See Step. Aff. at ¶ 2-3. Hurley has

been personally involved in all of these Ohio transactions, has participated in hundreds of telephone and written communications into Ohio to IEC, and has personally visited Ohio on a number of occasions during this time period. See Pett. Aff. at ¶ 9.

In late 2004 and early 2005, a number of disputes between the parties forced IEC to file this lawsuit. Among other things, Hurley consistently mislabeled IEC's controllers by stating that his company manufactured the devices; Hurley claimed to have rights as a co-inventor in IEC's products and intellectual property; and Hurley insisted that he and his companies were IEC's exclusive distributors, all in an effort to prevent IEC from selling directly to the public and competing with him. Id. at ¶ 10. These disputes culminated in Hurley's decision to cancel approximately $500,000 in outstanding purchase orders. Id. at ¶ 11.

On March 21, 2005, IEC filed with this Court a seven-count complaint against Defendants Hurley & Associates, Inc., HurleyIR, Inc. and Thomas J. Hurley. Six of the seven claims -- breach of contract, promissory estoppel, tortious interference with business relationships, false designation of origin (Lanham Act), unfair competition, and declaratory judgment concerning the claims of exclusivity -- are against Hurley's companies. See Complaint.

On the other hand, because Hurley's threats and claims of co-inventorship were made in Hurley's individual capacity, and because only a natural person can be a co-inventor, Count VI of the Complaint is directed to Tom Hurley individually. It seeks a declaratory judgment that Hurley is neither an inventor nor a co-inventor of IEC's products. See Complaint at ¶¶ 40-44. IEC will prove in this case that Hurley made *no* contributions to any of IEC's inventions, either in Maryland or anywhere else, and that Hurley has no basis for his frivolous threats that he has rights in IEC's intellectual property. See Pett. Aff. at ¶ 12.

Among the IEC inventions and products to which Hurley makes claim include security and surveillance software that IEC designed and patented called IntrudIR Alert; this technology detects and measures human heat signature emitted within a designated perimeter. See Complaint at ¶ 40; Pett. Aff. at ¶ 13. Hurley also claims an interest in IEC's control systems, which are the computerized boxes that control the movement and operation of the pan-and-tilt infra-red camera to which they are connected, as well as other related internal software and products. See Complaint at ¶ 40; Pett. Aff. at ¶ 14. (The above-described products will be collectively referred to as "the products"). The products were all conceived and developed in Ohio by Rick Pettegrew and other IEC engineers (collectively "IEC's engineers") between 2001 and 2005. Pett. Aff. at ¶ 15. During this period, IEC's engineers were all Ohio residents. Id. In addition to conceiving and developing the products in Ohio, IEC's engineers and employees also manufactured the products in Ohio, and distributed and marketed the products from Ohio. Id. at ¶¶ 16, 17.

In addition to the contacts described above, Hurley also had the following particular contacts with Ohio which directly gave rise to Count VI of the Complaint:

1. In a March 2005 telephone call that he initiated into Ohio, Hurley threatened Mr. Stepnowski of IEC that if IEC did not give him a royalty-free license in IEC's patent, he would "disclose prior art" that would interfere with that patent. See Step. Aff. at ¶ 9.

2. Hurley also personally called and sent written communications to Mr. Stepnowski in Ohio demanding the proprietary source codes to IEC's software on the grounds that he has rights in IEC's intellectual property. See Step. Aff. at ¶¶ 10-11, Exhibit B attached thereto (2/18/05 e-mail from Hurley with "Subject: Source

code insistence"), and Exhibit C attached thereto (2/17/05 e-mail from Hurley's assistant stating that "Tom insists in [sic.] having these records on file.").

3. Hurley personally sent a written communication to Mr. Pettegrew in Ohio referring to IEC's control system as "The Hurley/IEC control system". See Pett. Aff. at ¶ 18 and Exhibit A attached thereto.

4. Hurley told IEC's officers, in telephone and written communications into Ohio, that he is a "co-inventor" of IEC's products (Step. Aff. at ¶ 7-8), and has made various misrepresentations to support that position, falsely claiming that:

   a. He first conceived of the idea behind IEC's IntrudIR Alert software, though he did not (see Step. Aff. at ¶ 13);

   b. He "funded" the development of IEC's products, though he only paid nominal, contractually agreed-upon non-recoverable engineering costs associated with some of his purchase orders (see Step. Aff. at ¶ 14, and Exhibits B and C attached thereto);

   c. He created IEC and was therefore responsible for any intellectual property it had developed (see Step. Aff. at ¶ 15, and Exhibit D attached thereto (e-mail from Hurley claiming that he "put [IEC] into business));

   d. He and Rick Pettegrew had a verbal agreement granting Hurley rights in IEC's intellectual property, though no such agreement was ever made (see Pett. Aff. at ¶ 19; Step. Aff. at ¶ 16).

The following analysis establishes that this Court has jurisdiction over Hurley's person.

III. ARGUMENT

A. General Principles.

Because Count VI of the Complaint seeks a declaration concerning the validity and ownership of a U.S. Patent, this Court must apply the law of the Federal Circuit to determine whether it has personal jurisdiction over Hurley. Imperial Prod., Inc. v. Rice Endura Prod., Inc., 109 F. Supp.2d 809, 810 (S.D. Ohio 2000) (seeking declaratory judgment concerning alleged infringement) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); see also Gummow v. Cole, 2002 U.S. Dist. LEXIS 8271, *6 (N.D. Ill. May 8, 2002) (citing Graphic Controls Corp. v. Utah Med. Prod., Inc., 149 F.3d 1382, 1383 n. 1 (Fed. Cir. 1998)). The Court may rule on Hurley's Rule Motion to Dismiss with or without discovery or a hearing. Imperial Prod., Inc., 109 F. Supp.2d at 810; see also Serras v. First Tennessee Bank Nat'l Assoc., 875 F.2d 1212, 1214 (6th Cir. 1989). When the Court rules on a jurisdictional motion based upon written submissions alone, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. Imperial Prod., Inc., 109 F. Supp.2d at 810 (citing Graphic Controls Corp., 149 F.3d at 1383, n. 1). IEC's burden is merely to make a prima facie showing of personal jurisdiction. Imperial Prod., Inc., 109 F. Supp.2d at 810 (citing United States v. Ziegler Bolt and Parts Co., 111 F.3d 878, 880 (Fed. Cir. 1997)).

The Court employs a two-step process to determine whether it may exercise jurisdiction over a non-resident defendant. Imperial Prod., Inc., 109 F. Supp.2d at 811 (citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998)). First, the Court must consider whether jurisdiction is established under Ohio's long-arm statute. Id.; see also Fed. R. Civ. P. 4(k)(1)(A). Second, the Court must assess due process requirements and evaluate whether the exercise of jurisdiction over a foreign defendant comports with "traditional notions

of fair play and substantial justice." Id.; see also Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

This Court's exercise of personal jurisdiction over Hurley is appropriate under both the Ohio long-arm statute and due process analysis. The Motion to Dismiss should therefore be denied.

  **B. Hurley Is Subject To This Court's Jurisdiction Under Ohio's Long-Arm Statute.**

Section 2307.382 of the Ohio Revised Code, commonly referred to as the "Ohio long-arm statute," provides in pertinent part that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>  (1) Transacting any business in this state;

The Federal Circuit, applying the Ohio long-arm statute in a patent case originating in the Northern District of Ohio, has given the "transacting any business" portion of the long-arm statute the greatest reach possible consistent with due process. Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir. 1995) (citing In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 200, 224-225 (6th Cir. 1972), and numerous federal and state cases applying Ohio law.) Thus, under the Federal Circuit's analysis, the inquiry turns on the due process analysis. If the exercise of personal jurisdiction comports with due process requirements, then under Federal Circuit law it necessarily complies with Ohio's long-arm statute as well.[1]

---

[1] Since the Federal Circuit decided the Akro Corp. in 1995, the United States District Court for the Southern District of Ohio noted that, under more recent law in the Federal Circuit, only the "transacting any business" portion of the long-arm statute is treated as co-extensive with the reach of the due process clause. See Imperial Prod., Inc., 109 F. Supp. at 811 n. 3 (citing Schwanger v. Munchkin, Inc., 1999 U.S. App. LEXIS 25038 (Fed. Cir. Oct. 7, 1999)).

### C.  This Court's Exercise Of Jurisdiction Over Hurley Comports With The Requirements Of Due Process.

The key constitutional inquiry is whether a non-resident defendant has sufficient "minimum contacts" with the forum state such as to satisfy "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Federal Circuit, in Akro Corp., 45 F.3d at 1545, set forth a three-pronged test for determining whether a foreign defendant's contacts with Ohio constitute "minimum contacts". (The law of the Sixth and Federal Circuits are identical in this regard. See, e.g., Southern Machine Co. v. Mohasco Ind., 401 F.2d 374, 381 (6th Cir. 1968)). The factors are: (1) whether the defendant "purposefully directed" his activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." See Akro Corp., 45 F.3d at 1545. The first two factors correspond with the "minimum contacts" prong of the International Shoe analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis. Id.; see also Inamed Corp. v. Lubomyr, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

As discussed in greater detail in the following sections, this Court has jurisdiction over Hurley because all three of these prongs are easily satisfied. First, Hurley purposely directed his conduct toward Ohio by making numerous misrepresentations, threats and statements into Ohio and to Ohio residents claiming to have rights as a co-inventor of IEC's products, and threatening to interfere with IEC's patent if IEC did not give him a royalty-free license. See Step. Aff. at ¶¶ 9-16, and exhibits attached thereto. Second, IEC's declaratory judgment claim clearly "arises out of or relates to" Hurley's activities with Ohio; IEC's claim seeks to resolve the very dispute over intellectual property rights that Hurley's threats, claims and misrepresentations have caused.

See Complaint at ¶¶ 40-44. Third, assertion of personal jurisdiction over Hurley is both "reasonable and fair."

### 1. Hurley has Purposefully Availed Himself of the Privilege of Acting in Ohio.

A defendant's threats and demands as to the plaintiff's property, coupled with a steady pattern of profitable transactions with and communications into the state, support a finding of jurisdiction over an out-of-state defendant like Hurley. This point is well-illustrated in Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995). Therein, the plaintiff, an Ohio corporation, received letters from an out-of-state patentee claiming that the plaintiff was infringing on its patent. Id. at 1542-1543. The patentee had never been in Ohio and had no agents in Ohio, but had an ongoing relationship with a third-party corporation located in Ohio. Id. at 1543. The plaintiff brought an action in the United Stated District Court for the Northern District of Ohio for declaratory judgment seeking to have the parties' rights in the patent resolved. Id. at 1542. The district court dismissed the case finding insufficient minimal contacts. Id. The Federal Circuit Court reversed, holding that the defendant's mailing of infringement letters into Ohio and its ongoing relationship with another Ohio corporation satisfied the first prong of the due process test. Id. at 1546. Under these facts alone, the court stated that "it could scarcely be more clear that Luker purposefully directed activities at residents of Ohio within the meaning of the due process inquiry mandated by Burger King and International Shoe." Akro, 45 F.3d at 1546.

Likewise, Hurley has made threats and demands to IEC in Ohio claiming to have rights in IEC's intellectual property and seeking to extort concessions as to the sales of IEC's products, products that were conceived, designed, and manufactured in Ohio. See Pett. Aff. ¶¶ 2, 3, 15-17; Step. Aff. at ¶¶ 9-16, and exhibits attached thereto. Hurley has also personally conducted ongoing business relationships with this state for over four years, not just with IEC but also with

NASA in Ohio, and derived substantial benefits from such relationships. See Pett. Aff. at ¶¶ 5, 9; Step. Aff. at ¶ 2-5. Just like the author of the infringement letters in the Akro case, Hurley has directed his conduct into the State of Ohio and purposely availed himself of the privilege of acting there. As such, the first prong of the due process test is satisfied here.

    **2.**    **Hurley's Conduct In Ohio Gave Rise To IEC's Declaratory Judgment Claim.**

Hurley's threats, misrepresentations and claims to IEC's intellectual property are at the very center of, and gave rise to, IEC's claim for declaratory judgment "concerning the validity and ownership of the intellectual property described herein." Complaint at ¶ 44. The important case of Inamed Corp. v. Lubomyr, 249 F.3d 1356 (Fed. Cir. 2001), illustrates this point. Therein, the plaintiff filed a declaratory judgment action after receiving an accusatory patent infringement and cease-and-desist letter from the defendant. Id. at 1359. The action sought, among other things, a declaration of patent invalidity, unenforceability, and noninfringement. Id. The district court dismissed the action on personal jurisdiction grounds and the Federal Circuit reversed, holding that, as to the second prong of the due process test, the infringement letter gave rise to the plaintiff's claim and thus satisfied that prong. Id. at 1362. The court stated that "[t]he central purpose of a declaratory action is often to clear the air of infringement charges. Hence, Inamed's claim arises directly from Dr. Kuzmak's act of sending an infringement letter." Id. at 1362 (internal quotation marks omitted).

Hurley called and wrote IEC threatening to interfere with IEC's patent and claiming that he is a "co-inventor" of its products, then wrote to IEC demanding its proprietary and confidential source codes. See Step. Aff. at ¶¶ 9-16, and exhibits attached thereto. Such conduct gave rise to IEC's declaratory judgment action. See Complaint at ¶ 40 ("Mr. Hurley has asserted he should have been listed as a joint inventor of the software covered by IEC's U.S. Patent

Application.... Mr. Hurley also has asserted that he is a co-inventor of, and has rights to the intellectual property in, IEC's control systems...."). Because of his assertions of rights in IEC's intellectual property, as well as his threats to interfere and unfairly compete with IEC, IEC has asked for "a declaration from this Court that Mr. Hurley is not a co-inventor under U.S. Patent Law." See id. at ¶ 44. The second prong of the due process test is clearly satisfied.

### 3. The Exercise Of Jurisdiction Over Hurley Is Reasonable.

Once the first two prongs of the due process test are met, the burden shifts to Hurley to convince this Court that the exercise of jurisdiction over him would not be "reasonable and fair." See Akro, 45 F.3d at 1545-46. This burden is heavy: where a party who purposefully has directed his conduct at forum residents seeks to defeat jurisdiction, he must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)(noting that "[m]ost such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional."). Specifically, the Federal Circuit has stated that findings of unreasonableness after the first two prongs have been met should be "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994). Hurley has not even addressed this burden on this issue.

In determining whether Hurley could meet this burden, the Court would be required to consider his arguments as to the following factors: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. See Inamed Corp., 249 F.3d at 1363 (citing Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)).

Had Hurley attempted to address this point, the Court would note that: (1) the burden on Hurley of litigating in Ohio is minimal since he is already intimately involved in this litigation by virtue of his position as founder, officer, and "sole decision maker" of the other two defendants in this litigation, neither of which contests jurisdiction, Id. at ¶ 7; Step. Aff. at ¶ 6; see also Exhibits E (bio from website of Hurley & Associates, Inc. and HurleyIR, Inc., stating Hurley is CEO and founder) and F (Dunn & Bradstreet Report stating Hurley is 100% shareholder of Hurley & Associates, Inc.); (2) Ohio has a "manifest interest" in providing its citizens with a forum for redressing the restraint of its commerce and production caused by claims of infringement, Akro, 45 F.3d at 1549 (holding that Ohio did have such an interest in similar patent case); (3) IEC's interest in obtaining relief is great, for without such relief, its right to distribute its products without the threat of interference is endangered, particularly where Hurley attempts to extort licensing concessions and disclosure of confidential source code by asserting his baseless claims, see Step. Aff. at ¶¶ 9-10; (4) the interstate interest in *efficient* resolution of controversies is also great, again, because Hurley is already in this litigation in this forum, because an actual controversy exists and threatens substantial harm to IEC through business and patent interference, and because piecemeal litigation of the different issues Hurley has caused to be litigated would be counterproductive and wasteful; and lastly (5) all states share in the policy of obtaining closure for commerce purposes concerning one party's accusations of patent

infringement against another party, closure which can readily be obtained in this forum, where the litigation concerning the very products at issue has already commenced.

The exercise of jurisdiction over Hurley in Ohio is reasonable for these reasons. Hurley has not even attempted to show otherwise, and his failure to do so is dispositive given his burden. This Court's exercise of jurisdiction over Hurley is thus both fair and reasonable.

D. **Tom Hurley Cannot Hide Behind A Fiduciary Shield.**

Hurley cannot hide behind the fiduciary shield doctrine for at least five reasons.

First, the Federal Circuit has not adopted the fiduciary shield doctrine; it is the Federal Circuit's law that applies here, not Sixth Circuit law. Hurley fails to cite to a single Federal Circuit decision applying or even recognizing that doctrine. There appears to be none. See generally Sonja Larsen, Validity, Construction and Application of "Fiduciary shield" Doctrine -- Modern Cases, 79 A.L.R.5th 587 (2000) (updated as of 2005).

Second, a critical distinction must be made: under black-letter patent law, Tom Hurley *in his individual capacity* is the only one who can be deemed a co-inventor of the products at issue, or otherwise have rights in IEC's intellectual property absent an assignment. See, e.g., Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993) ("[O]nly natural persons can be 'inventors.' . . . . It is elementary that inventorship and ownership are separate issues.") (citing 35 U.S.C. §§ 115-118). Thus, when he claims to have rights in IEC's intellectual property, he makes those claims not on behalf of his companies, *but in his individual capacity only*. It is those claims and threats that Hurley personally made that give rise to IEC's declaratory judgment claim. Even if the Federal Circuit recognized the fiduciary shield doctrine, it would not apply here because Hurley's conduct giving rise to IEC's claims was necessarily committed in his individual capacity.

{AEG0565.DOC;4} 13

Third, and again assuming that the Federal Circuit *could* or ever did apply the fiduciary shield doctrine, it would necessarily hold that Tom Hurley's personal involvement in all of his company's transactions with Ohio preclude his ability to hide behind the doctrine. In jurisdictions that have recognized the doctrine, it is axiomatic that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice...." Balance Dynamics Corp. v. Schmitt Ind., Inc., 204 F.3d 683, 698 (6th Cir. 2000) (refusing, in Lanham Act case, to apply the fiduciary shield doctrine due to actors' personal involvement in transactions, and remanding to district court for due process determination) (cited by Hurley in his Motion to Dismiss at p. 4); see also Walker v. Concoby, 79 F. Supp.2d 827, 832 (N.D. Ohio 1999) (refusing, in copyright infringement case, to apply fiduciary shield doctrine to protect defendants who personally negotiated the authorship of infringing text, which was the transaction giving rise to the cause of action).

Here, Tom Hurley personally made the demands, threats and claims that gave rise to IEC's claim for declaratory judgment. He picked up the phone and called IEC's CFO Rich Stepnowski on a number of different occasions to state that he was a co-inventor of IEC's products, to demand IEC's proprietary source codes to its software, and to threaten interference with IEC's patent absent IEC's issuance to him of a royalty-free license. See Step. Aff. at ¶¶ 8-10. He has also, in conjunction with these demands and threats, made a number of false representations concerning the alleged basis for his claims. Id. at ¶¶ 12-16. He was as actively involved in the conduct underlying the Complaint as one can be. He was also personally involved in all of the transactions with IEC, participating in hundreds of written and telephonic communications about them with IEC. See Pett. Aff. at ¶ 9.

Fourth, courts in jurisdictions that recognize the fiduciary shield doctrine -- including Tom Hurley's home state of Maryland -- refuse to apply it where the exercise of jurisdiction is based upon the "transacting business provision" of the state's long-arm statute, where that provision reaches the outer limits of due process. See Zeman v. Lotus Heart, Inc., 717 F. Supp. 373, 376 (D.Md. 1989); Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 328 (D.Md. 1983). Because the Federal Circuit applies just such an expansive reach of Ohio's long-arm Statute (see Akro Corp., 45 F.3d at 1544), Hurley cannot rely on the doctrine for this reason as well.

Lastly, as the 100% owner, founder, officer and "sole decision-maker" of the corporate defendants in this action, Hurley cannot invoke the fiduciary shield doctrine because his interests are co-extensive with his companies' interests. See Kohler Co. v. Kohler Intern., Ltd., 196 F. Supp.2d 690 (N.D. Ill 2002) (sole owners and officers of corporations could not invoke Illinois' fiduciary shield doctrine); see also Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012 (10th Cir. 1990) (holding the doctrine inapplicable even if Oklahoma did recognize it because corporate defendant was alter-ego of its owner); see generally Larsen, 79 A.L.R.5th 587 at § III, and numerous cases cited therein concerning "coextensive interests". Attached to this Memorandum at Exhibit E is the "Bio" page from the website for HurleyIR, Inc. and Hurley & Associates, Inc., stating that Hurley is the "CEO and founder" of both companies. Attached at Exhibit F is a "Dunn & Bradstreet Information Report", current as of June 6, 2005, for Hurley & Associates, Inc. The Report states at page 2 that "100% of capital stock is owned by Thomas L. Hurley." Also attached to this Memorandum are the sworn affidavits of Richard Pettegrew and Richard Stepnowski, averring that Hurley has told both of them that he is the "founder" of, and "sole decision-maker" at, his companies. See Pett. Aff. at ¶ 7; Step. Aff. at ¶ 6. Because Tom

Hurley's interests in the subject matter of this litigation are clearly coextensive with those of the companies that he entirely controls, he cannot hide behind the fiduciary shield doctrine.

### IV. CONCLUSION

Hurley ignores his contacts with Ohio that gave rise to IEC's claim against him for Declaratory Judgment: his claims and threats into Ohio regarding co-inventorship of IEC's products, all of which were made in Ohio by Ohio-resident engineers working for an Ohio corporation with an Ohio principal place of business. It is *these* contacts -- the claims and the threats -- and their subject matter, that give rise to IEC's claim for declaratory relief. *It is these* contacts that support this Court's specific jurisdiction over Hurley as to that claim.

The Court's jurisdiction over Hurley is bolstered by the facts that Hurley personally participated in over 600 individual transactions with an Ohio corporation, concerning goods that were also conceived and manufactured in, and distributed and marketed from, the State of Ohio. Hurley has been personally involved in hundreds of deliberate communications into Ohio concerning those products, and he has derived millions of dollars in revenues from his purchase and resale of those Ohio products. The companies which he tries to use as a shield are entities that Hurley founded, in which he holds 100% ownership interests, and in which he is admittedly the "sole decision-maker."

In view of Hurley's purposeful availment of the privilege of transacting business in Ohio evidenced by his threats directed at an Ohio company and its principals, and his claims to being a co-inventor of fundamentally Ohio inventions, this Court has personal jurisdiction over him. Accordingly, his Motion to Dismiss should be denied.

_s/ Alexander E. Gertsburg_
ANTHONY J. LaCERVA (0032876)
*alacerva@calfee.com*
ALEXANDER E. GERTSBURG (0074401)
*agertsburg@calfee.com*
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114-2688
216-622-8200/Fax 216-241-0816

Attorneys for Plaintiff

## LOCAL RULE 7.1(f) CERTIFICATION

Under Rule 7.1(f) of the Local Rules of the United States District Court for the Northern District of Ohio, this will certify that this case has been assigned to the Court's standard track, and that this Memorandum in Opposition adheres to the page limitations set forth in that section.

_s/ Alexander E. Gertsburg_
One of the Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2005, the foregoing Memorandum in Opposition to Motion to Dismiss was served electronically. Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

A copy of the foregoing Memorandum in Opposition to Motion to Dismiss was also served by regular mail on July 5, 2005, upon John R. Wellschlager, Esq., DLA Piper Rudnick Gray Cary, 6225 Smith Avenue, Baltimore, MD 21209-3600.

_s/ Alexander E. Gertsburg_
One of the Attorneys for Plaintiff