IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INNOVATIVE ENGINEERING & CONSULTING CORP., | ) ) ) | Case No.: 1:05-CV-00764 |
| Plaintiff, | ) ) | Judge: Kathleen M. O'Malley |
| v. | ) ) ) | Magistrate Judge: Patricia A. Hemann |
| HURLEY & ASSOCIATES, INC., et al. | ) ) ) | **SUR-REPLY OF PLAINTIFF INNOVATIVE ENGINEERING & CONSULTING CORP. SUPPORTING** |
| Defendants. | ) ) | **DENIAL OF MOTION OF THOMAS J. HURLEY TO DISMISS** |

### I. INTRODUCTION

IEC is compelled to correct a number of misstatements in Hurley's Reply Memorandum. Hurley now recognizes that Federal Circuit law applies. IEC sets forth the proper Federal Circuit test herein. Also, Hurley now concedes that the fiduciary shield doctrine is inapplicable by dropping all reference to it, but he incorrectly continues to apply it anyway. See Reply at 2 (arguing that Hurley's contacts with Ohio did not occur in his "personal capacity"). Hurley cannot continue to pretend that he is a stranger to Ohio for purposes of the declaratory judgment claim he has prompted IEC to file. His Motion to Dismiss should be denied.

### II. ARGUMENT

Hurley is correct in stating that the Ohio long-arm statute is not co-extensive with the due process clause. See Reply at p. 2, n. 2 (citing Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351 (Fed. Cir. 2002)). This analysis, however, does not change the correct conclusion: Hurley's contacts with IEC and the State of Ohio make him subject to this Court's jurisdiction.

{WS25.TMP;3}

Hurley transacted business in Ohio when he said and did the things that gave rise to IEC's declaratory judgment claim. His demand for IEC's proprietary source code did not arise out of thin air, but rather from prior contracts that Hurley had with IEC—or in the words of the Federal Circuit, part of "a substantial connection" with Ohio, and part of "an affirmative obligation" here. <u>Hildebrand</u>, 279 F.3d at 1354 (citations omitted). Indeed, one need look no further than the words that Hurley himself used to demand IEC's confidential source codes: "There are agreements in place, in writing. . . . This is only one of many binding contracts on file for stages of funded development agreements. . . ." <u>See</u> Exhibit B to Stepnowski Affidavit, attached to IEC's Memorandum in Opposition.

Hurley's other demands and claims that gave rise to IEC's declaratory judgment claim also constitute transacting business. In his effort to distance himself from the many "transactions" he has had with IEC and Ohio, he effectively makes two insupportable arguments. First, he argues that the statements he made concerning IEC's intellectual property all occurred in a vacuum. They did not. They were part of the transactions he has had with IEC in Ohio since 2001, and again, the statements themselves prove it. <u>See</u> Memorandum in Opposition at 4-5, and affidavits attached thereto (Hurley stated that he had a verbal agreement with IEC's CEO early on in their relationship, has stated in writing that he "put [IEC] into business," and that he first conceived and then funded the development of its products). Hurley has been transacting business with IEC for four years concerning the very products at issue, and he was continuing to do so when he made the threats, demands and misrepresentations that caused IEC to seek a declaratory judgment from this Court.

Second, Hurley continues to hide behind the fiduciary shield doctrine while effectively conceding that it does not apply. As IEC demonstrated in its opposition brief, the Federal Circuit

has not adopted that doctrine. Recognizing his mistake in applying the law of the wrong jurisdiction, Hurley has dropped all reference to the doctrine. He continues to apply it, however, by relying on a distinction between his own contacts with Ohio and his contacts on behalf of his two companies. See Reply at 3 (stating that Hurley's business relationships in Ohio are actually "between Hurley Associates [*sic.*], HurleyIR, IEC, and NASA"). He also does not and cannot dispute that he controls his companies, and that he is 100% shareholder and admittedly the "sole decision-maker". See IEC's Memorandum in Opposition at 15-16, cases cited therein, and exhibits attached thereto.

The declaratory judgment and patent cases Hurley cites in his Reply are distinguishable from this case. See Reply at 5 (citing Hildebrand, 279 F.3d at 1354-5; Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 143 F.3d 1355 (Fed. Cir. 1998); and Graphic Controls Corp. v. Utah Med. Prod., Inc., 149 F.3d 1382 (Fed. Cir. 1998)). The defendants' contacts with the forum state giving rise to the claims in those cases consisted *entirely* of cease-and-desist letters and negotiations that never led to ongoing obligations. See, e.g., Hildebrand, 279 F.3d at 1353 (four letters and a phone call); Graphic Controls Corp., 149 F.3d at 1388 (two cease and desist letters only, with no effort by defendant to "engage in [any] other business activity" with plaintiff); Red Wing Shoe Co., Inc., 143 F.3d at 1357-8 (three warning letters; the plaintiff also relied on the defendant's licenses with other companies located in the forum state, but the defendant "had no dealings" with those licensees in the forum state). Unlike those defendants, Hurley's contacts with Ohio giving rise to IEC's declaratory judgment claim consisted of far more than mere cease-and-desist letters. They were part of four years' worth of business transactions concerning

the very Ohio products, and the very process used in creating the products, that are at issue in IEC's claim that Hurley is not a co-inventor on IEC's thermal imaging patent.[1]

The cases on which Hurley relies are also distinguishable because those defendants were the patentees.  Here, IEC is both the plaintiff and the patentee.  In the cases cited by Hurley, the Federal Circuit protected the right *of a patentee* to send cease-and-desist letters to out-of-state infringers without being haled into court in the infringer's forum.  The court reasoned that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign state."  Red Wing Shoe Co., Inc., 148 F.3d at 1360; see also Hildebrand, 279 F.3d 1351; Graphic Controls Corp., 149 F.3d 1382.  That reasoning makes sense: an inventor who has formally earned the protection of the United States patent laws should not be penalized by virtue of an infringer's location.  IEC, not Hurley, has earned that protection here.  The Federal Circuit's efforts to protect the patentee should not inure to the benefit of one who has, after-the-fact, concocted the basis for his claim to inventorship in an effort to compete unfairly with the patentee.

The Court should reject Hurley's narrow view of the law of personal jurisdiction.  It should also reject his invitation to apply a doctrine that he concedes is inapplicable.  His transacting of business in Ohio gives rise to IEC's declaratory judgment claim, thus satisfying the Ohio long-arm statute.

---

[1] Indeed, Hurley acknowledges this distinction but then misapplies it.  See Reply at 5 (stating that IEC's cases are distinguishable because, in those cases, "the defendants had other personal contacts with the forum state upon which the plaintiffs based their claims.").  As demonstrated herein and in IEC's Opposition, Hurley, too, "had other personal contacts" aside from the mere cease-and-desist letters at issue in the cases he cites.

## CONCLUSION

Hurley cannot continue his pretense of being a stranger to Ohio.  The threats, misrepresentations and claims to IEC's intellectual property unquestionably constitute transacting business in this state.  Hurley's contacts with Ohio giving rise to IEC's declaratory judgment claim date back at least four years.  Indeed, he relies on those early contacts to support his claim for co-inventorship—for example, by claiming that he had a verbal agreement with IEC's CEO for a license in IEC's patent, and that he funded the invention.  Hurley was clearly continuing to "transact business" when he said and did the things that led to IEC's declaratory judgment claim. The Court should deny his Motion to Dismiss.


    *s/ Alexander E. Gertsburg*
ANTHONY J. LaCERVA (0032876)
*alacerva@calfee.com*
ALEXANDER E. GERTSBURG (0074401)
*agertsburg@calfee.com*
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio  44114-2688
216-622-8200/Fax 216-241-0816

Attorneys for Plaintiff

{WS25.TMP;3}　　　　　　　　　　5

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2005, the foregoing *Sur-Reply* was served electronically. Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      *s/ Alexander E. Gertsburg*
One of the Attorneys for Plaintiff