IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INNOVATIVE ENGINEERING & CONSULTING CORP., | ) ) | Case No. 1:05 CV 0764 |
| | ) | Judge Kathleen M. O'Malley |
| Plaintiff, | ) ) | Magistrate Judge Patricia A. Hemann |
| v. | ) ) | **MEMORANDUM OF** |
| HURLEY & ASSOCIATES, INC., et al., | ) ) | **PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION FOR** |
| Defendants. | ) | **PARTIAL SUMMARY JUDGMENT** |

Innovative Engineering & Consulting Corp. ("IEC") submits this memorandum in opposition to the motion for partial summary judgment filed by defendants Hurley & Associates, Inc. ("Hurley & Associates") and HurleyIR, Inc.  ("HurleyIR") (collectively, "Hurley") (Dkt. No. 39).  For the reasons set forth below, the Court should deny Hurley's motion.

I.      **INTRODUCTION**

Hurley has inflicted real and serious harm upon IEC.  IEC asks for and is entitled to the full panoply of relief available under the Uniform Commercial Code.  Nevertheless, in a unique and improper filing, Hurley seeks to have IEC's breach of contract and promissory estoppel claims summarily dismissed based upon IEC's alleged failure to mitigate its damages.  Hurley argues that IEC has failed to take commercially reasonable measures to mitigate its damages because IEC did not accept Hurley's post-litigation offer to settle a portion of this dispute.

Hurley is wrong, and its motion for partial summary judgment should be denied for the following reasons:

*First*, Hurley's motion does not address all of the damages claimed by IEC on its breach of contract and promissory estoppel claims, and thus goes only to a portion of IEC's claims in Count I and II of the First Amended Complaint.  Because IEC seeks not only damages

attributable to the price of the goods at issues, but also compensatory, incidental and consequential damages and its lost profits, Hurley's motion is procedurally improper.

**Second**, Hurley's offer to reinstate the purchase orders came after the start of litigation and was made in the course of the parties' attempt to negotiate a global resolution of the disputes now before the Court.  That offer of settlement is inadmissible under Rule 408 of the Federal Rules of Evidence and cannot constitute evidence that IEC failed to mitigate its damages.

**Third**, Hurley's offer of settlement is of no legal consequence because the Uniform Commercial Code and applicable case law bar Hurley, as the breaching buyer, from revoking its anticipatory repudiation of the purchase orders after IEC initiated litigation to seek compensation for Hurley's breach.

**Fourth**, Hurley cannot meet its burden of establishing that IEC acted in a commercially unreasonable manner where the evidence shows that IEC attempted to negotiate a resolution under which IEC would get paid for the goods it wanted to sell to Hurley.

For these reasons, the Court should deny Hurley's motion for partial summary judgment.

## II.    STATEMENT OF FACTS

Many of the facts Hurley recites in support of its motion are directed to factual matters that are hotly disputed.  Moreover, much of Hurley's recitation is not relevant to the single, narrow issue raised by Hurley's motion: whether Hurley has met its burden, by the introduction of admissible evidence, of showing that IEC acted in a commercially unreasonable manner in failing to mitigate the damages caused by Hurley's breach of contract.  Setting aside its conclusory references to ancillary issues such as contract formation, the only evidence offered by Hurley on that issue is a single settlement offer it sent to IEC on April 15, 2005 (the "April 15 settlement offer").  But because Hurley's memorandum goes so far afield, and in order to give

the Court some background leading up to Hurley's breach of contract, IEC offers the following brief statement for the Court's consideration:

IEC was incorporated in Ohio on October 28, 1999.  (Affidavit of Richard Stepnowski, at ¶ 2.)  It is in the business of manufacturing, designing and selling thermal imaging products. (*Id.*) IEC employs a number of degreed engineers in its business to design, manufacture, integrate and test thermal imaging systems and products. (*Id.*) Defendants Hurley & Associates, HurleyIR, Inc. and Thomas J. Hurley are in the business of assembling infrared camera components purchased from suppliers like IEC and distributing the assembled cameras to resellers and end-users at a profit. (*Id.* at ¶ 3.)

IEC and Hurley had a business relationship dating from 2001. (*Id.* at ¶ 4.)  Their first transaction was on January 3, 2001, when IEC issued a purchase order to Hurley for a used, handheld, commercial, off-the-shelf Raytheon IR camera. (*Id.*) Shortly thereafter, IEC and Hurley entered into a business relationship whereby IEC would manufacture and sell to Hurley the primary component of an infrared camera system: the control system that served as "the brain" of the entire system, controlling the infrared camera itself. (*Id.*) Hurley then purchased Raytheon infrared cameras, Quickset pan-and-tilt mechanisms, and enclosures for the infrared camera, would plug the off-the-shelf components into the IEC control system, and would then sell the entire system to end-users. (*Id.*) IEC's componentry was the only customized and proprietary piece of the system assembled by Hurley. (*Id.*)

During the course of the parties' business relationship, IEC learned that Hurley was placing labels that indicated "Manufactured by Hurley & Associates, Inc." on the IEC components of the camera systems Hurley was selling. (*Id.* at ¶ 5.)  IEC demanded that Hurley stop falsely representing that Hurley was the manufacturer of IEC's controller systems. (*Id.*) IEC

also learned that Hurley had made a number of other misrepresentations, including his claim that his company was a "multi-disciplined" and "value-added engineering firm" that "designs and develops special engineered infrared systems and software customized to the user's application." (*Id.* at ¶ 6.)  Hurley made these and other similar false statements directly to his distributors and to the end-users of thermal imaging products. (*Id.*)

In October 2004 and on subsequent occasions, Hurley made numerous threats and claims to IEC in an effort to prevent IEC from competing with him. (*Id.* at ¶ 7.)  For example, he claimed to be a co-inventor of IEC's products, and threatened to interfere with IEC's patent by claiming that it was the subject of prior art that he would disclose. (*Id.*)  Hurley also claimed that the relationship between IEC and Hurley was exclusive and that IEC was not permitted to deal with any of Hurley's customers, resellers, or potential customers. (*Id.*)

In late 2004 and early 2005, Hurley placed four purchase orders (PO 23, PO 21, PO 18, and PO 1155) with IEC for its control systems and accessories in the total amount of $504,300. (*Id.* at ¶ 8.)  These orders called for specially manufactured goods; specifically, interface control systems and related accessories. (*Id.*) IEC accepted those four purchase orders and began production of the specially-manufactured goods that Hurley contracted to purchase.[1] (*Id.*)

At the beginning of February, 2005, IEC launched its new website and began to feature its new, complete infrared camera system. (*Id.* at ¶ 9.)  After noticing IEC's new website, Hurley "indefinitely postponed" PO 1155 via fax, giving no reason. (*Id.* at ¶ 10.)  Hurley later indicated that he was "postponing" the Purchase Order for "technical reasons." (*Id.*)  Shortly thereafter, Hurley "cancelled" PO 1155. (*Id.* at ¶ 11.)  Hurley later explained his actions by claiming that IEC could not compete with him since he had to justify the sale and open order of his system to

---

[1] There was a minor issue between Hurley and IEC regarding the cable configurations specified on one of the orders (PO 1155) that was easily corrected. (Stepnowski Aff. ¶ 8.) On January 31, 2005, Hurley e-mailed the revised cable configuration and apologized for the earlier confusion. (*Id.*)

his customers. (*Id.* at ¶ 12.)  Hurley further stated he would not fund his competition through the purchase of IEC's control systems and that he had some unwritten exclusivity agreement that prohibited IEC from selling to anyone other than Hurley. (*Id.*)

Despite Hurley's actions, IEC was willing to continue delivery under the purchase orders provided that Hurley would agree to pay C.O.D. for all future shipments. (*Id.* at ¶ 13.)  Hurley decided instead to cancel the remaining purchase orders. (*Id.* at ¶ 14.)  This conduct, and Hurley's threats, prompted IEC to file (on March 21, 2005) a seven-count complaint against Hurley for breach of contract, promissory estoppel, tortious interference with business relationships, false designation of origin, unfair competition, and for a declaratory judgment concerning the claims of exclusivity and co-inventorship.  (*See* Complaint, Dkt. No. 1.)  IEC later amended its Complaint to add a claim for false advertising.  (*See* First Amended Complaint, Dkt. No. 38.)

Shortly after the filing of the suit, the parties' principals engaged in negotiations in an attempt to resolve all of the issues between them. (Stepnowski Aff. ¶ 16.)  On April 15, 2005, in the midst of those ongoing negotiations, Hurley sent to IEC an e-mail in which it offered to partially resolve IEC's claims by agreeing to accept delivery of the items in the cancelled Purchase Orders under "Net 30" payment terms. (*Id.*) Hurley demanded an answer by the close of the next business day, or else "you proceed at your own risk." (*Id.*)

IEC rejected Hurley's April 15 settlement offer because, among other reasons, IEC was unwilling to extend Hurley 30 days' credit in view of the fact that Hurley had already repudiated its obligations under its contracts with IEC, because the parties were engaged in ongoing litigation, and because Hurley had not been paying previous invoices in a timely manner.  (*Id.* at ¶ 17.)  IEC's concerns were compounded by the fact that Hurley had been constantly changing

negotiating positions, Hurley's wrongful labeling of IEC's products as being "Manufactured by Hurley & Associates, Inc.," Hurley's claim that IEC was somehow prohibited from selling to distributors or end-users other than Hurley, and Thomas Hurley's false claim to being a co-inventor of technology developed and patented by IEC. (*Id.*)

Nonetheless, in an effort to sell the specially-manufactured goods that Hurley contracted to purchase and to resolve the dispute, IEC and its counsel for the next several months continued to negotiate with Hurley and its counsel. (*Id.* at ¶ 18.)  Indeed, the parties were very close to reaching a global resolution of the parties' disputes. (*Id.*)  They had come to terms on a Sales Agreement under which Hurley would take delivery of the goods covered by the Purchase Orders in accordance with a defined schedule. (*Id.*)  The Sales Agreement also ensured that IEC would be paid for the goods it delivered to Hurley. (*Id.*)  These negotiations broke down on June 1, 2005, however, over the scope of the release Hurley would give to IEC. (*Id.*) As a result, the Sales Agreement was never executed or implemented. (*Id.*)

## III.   LAW AND ARGUMENT

### A.   Summary Judgment Standard And Hurley's Burden Of Proof.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  As the United States Supreme Court has explained, "a party seeking summary judgment ***always*** bears the initial responsibility of informing the district court of the basis for its motion" and must identify the evidence "it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added).  The Court must view such evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material

fact exists.  *In re Sulzer Orthopedics Inc. Hip Prosthesis & Knee Prosthesis Prods. Liab. Litig.,* 335 F. Supp. 2d 830, 833 (N.D. Ohio 2004).

On issues where it has the burden of proof, the moving party must support its motion with competent, admissible evidence.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; (*Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994)  ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). When there is no admissible evidence before the Court to support the movant's motion, the motion must fail and the non-moving party need not to come forward with facts sufficient to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e) (burden of production shifts to non-moving party only when motion "is made and supported as provided in this rule").

An alleged failure to mitigate damages is an affirmative defense on which the defendant bears the burden of proof.  *Young v. Frank's Nursery & Grafts, Inc.*, 58 Ohio St. 3d 242, 244 (1991).  Hurley, therefore, has the burden of establishing that IEC failed to mitigate its damages with competent admissible evidence.  *Shonac Corp. v. Maersk, Inc.,* 159 F. Supp. 2d 1020, 1031 (S.D. Ohio 2001); *State ex rel. Martin v. Columbus Dep't of Health,* 58 Ohio St. 2d 261 (1979). To meet that burden, Hurley must establish by competent evidence that IEC acted in a commercially unreasonable manner by failing to make a reasonable effort to resell the specially manufactured goods subject to the purchase orders at a reasonable price and that, had it done so, its efforts would have been successful.  *See* Ohio Rev. Code § 1302.83(A)(1)-(2); *Young v. Frank's Nursery & Crafts, Inc.*, 58 Ohio St. 242, 244 and syl. ¶ 1 (1991).

Attempting to meet its burden, Hurley raises a whole host of factual issues, most all of which are irrelevant to the actual issue before the Court.  But Hurley fails to offer any relevant,

competent evidence on the issue of whether IEC has failed to mitigate its damages.  Hurley has

not met its burden and its motion must be denied.

     **B.**     <u>**Hurley's Motion Is Defective Because It Addresses Only A Single Component Of The Damages To Which IEC Is Entitled.**</u>

Summary judgment cannot be entertained on an issue that falls short of disposing of an

entire claim.  *See Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216 (7th Cir. 1946) (Rule 56

"does not contemplate a summary judgment for a portion of a single claim in a suit.  Neither

does any other rule of the Rules of Civil Procedure so contemplate, as far as we are aware.");

*Coffman v. Federal Laboratories, Inc.,* 171 F.2d 94, 98 (3d Cir. 1948) (same); *Jamsports and*

*Entertainment, LLC v. Paradama Productions, Inc.,* 336 F. Supp. 2d 824, 845-46 (D. D.C. 2004)

(summary judgment inappropriate on non-dispositive elements of claim).  Because Hurley's

motion is non-dispositive, it is outside the scope of Rule 56 of the Federal Rules of Civil

Procedure.

Hurley seeks summary judgment on the single theory that IEC's claim for recovery of the

contract price for the goods Hurley agreed to purchase is lacking because IEC rejected Hurley's

post-litigation offer to reinstate the purchase orders.  (Hurley Mem. in Supp. at 5-6.[2]).  The

motion does not address IEC's right to recovery of its other damages, including its lost profits,

incidental and consequential damages, on its breach of contract claim.  *See, e.g.,* Ohio Rev. Code

§§ 1302.80, 1302.82(A), (B) & 1302.84.  Moreover, the motion does not address IEC's right to

recover either its reliance or expectancy damages on its promissory estoppel claim.  *See*

*Bluegrass Center, LLC v. U.S. Intec, Inc.*, 49 Fed. Appx. 25 (6th Cir. 2002).  Because it does not

---

[2] Later in its brief, Hurley asserts that recovery of the price of the purchase orders is "all the damage it now seeks." (Hurley Mem. in Supp. at 7.)  A review of the prayer for relief in IEC's First Amended Complaint makes it clear that IEC also seeks recovery of its incidental and consequential damages and its lost profits under its breach of contract claim and all available damages under its promissory estoppel claim. (*See* First Amended Complaint, Dkt. No. 38, at 9.) Hurley does not address any of these bases for recovery in its motion for partial summary judgment.

address these additional and alternative bases of IEC's claims, Hurley's motion is non-dispositive and procedurally improper.  The Court need go no further to deny the motion.

C.    **Hurley's Motion Is Defective Because The Only "Evidence" Offered In Support Is Inadmissible.**

Offers of settlement are inadmissible as proof of liability or the amount of damages. Fed. R. Evid. 408. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 979-982 (6th Cir. 2003).  In this regard, Rule 408 of the Federal Rules of Evidence provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, as valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed. R. Evid. 408.

Because of Rule 408, "settlement offers do not trigger the duty to mitigate.  There is no duty to surrender the claim in order to mitigate damages." *Clevenger v. Bolingbrook Chevrolet, Inc.,* 401 F. Supp. 2d 878, 882 (N.D. Ill. 2005) (excluding settlement proposal offered to show failure to mitigate damages).  In other words, because "[e]vidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408." *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 826-27 (2d Cir. 1992).

The opinion in *Security Funding Corp. v. Mazzurco*, No. L-92-311, 1993 Ohio App. Lexis 2969 (6th App. Dist. June 11, 1993), is instructive.[3]  In *Security Funding,* the court of appeals upheld the trial court's denial of the breaching party's motion for summary judgment on its mitigation of damages affirmative defense where the basis of that defense was the non-

---

[3] Federal procedural rules should not be applied to reach a result contradictory to Ohio substantive law.  *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938); *Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109 (1945).  Because Federal Rule 408 mirrors Ohio Rule 408, consideration of Ohio law is warranted and proper.

breaching party's rejection of an offer to perform the contract at issue made during settlement negotiations. *Id.* at *3-4.  Adopting the opinion of the trial court, the court of appeals held that the evidence offered in support of the defendant's motion – a letter setting forth the terms of the offer and an affidavit by the offering party – was inadmissible under Rule 408 and therefore could not be considered on the motion for summary on the plaintiff's alleged failure to mitigate its damages. *Id.* at 18-19.  For the same reason, Rule 408 of the Federal Rules of Evidence precludes the Court from considering Hurley's offer, IEC's response or the continued negotiations that followed as evidence that IEC allegedly failed to mitigate its damages.

IEC's and Hurley's principals were working on settling all of their disputes when Hurley got the idea to e-mail Richard Stepnowski on April 15th.  (Stepnowski Affidavit, ¶16.) Moreover, the April 15 settlement offer indicates on its face that the parties were engaged in active settlement negotiations and that Hurley was offering to settle a part of the parties' overall dispute. Hurley stated in its April 15 settlement offer:

- "We are sorry that we have not reached a ***global resolution of our differences.***"

- "We continue to believe that a ***global solution*** is in everyone's best interests, and we are confident that we have been more than reasonable under the circumstances in our ***attempts to reach a resolution.***"

- Because we have not reached a ***global agreement***, …"

- "This offer to renew the purchase order is intended to ***resolve this portion of your dispute*** …"

(*See* Exh. D to Hurley Mem. in Supp., emphasis added.)  The fact that Hurley offered to perform its obligations under the disputed purchase orders brings the April 15 settlement offer within the exclusionary scope of Rule 408.  *See McRae v. Publications Int'l,* 985 F. Supp. 1036, 1041 (D. Kan. 1997) (offer by breaching party to perform contract is valuable consideration offered in

settlement and falls within scope of Rule 408).  Finally, the timing of Hurley's offer (after IEC filed its complaint and Hurley's counsel entered an appearance) brings it within the scope of Rule 408. *See Pierce,* 955 F.3d at 827 (offer presumed to fall within Rule 408 if "a party is represented by counsel, threatens litigation and has initiated the first administrative steps in litigation").

For these reasons, the April 15 settlement offer is inadmissible under Rule 408 as evidence that IEC has failed to mitigate its damages.  Because the only evidence presented by Hurley is inadmissible, Hurley' motion for partial summary judgment is unsupported and should be denied.

> **D.  Even If Considered, Hurley's "Evidence" Is Insufficient To Establish That IEC Has Failed To Mitigate Its Damages.**

> **1.  As the Breaching Party, Hurley Cannot Reinstate The Purchase Orders.**

Hurley's post-breach attempt to revoke its anticipatory repudiation of the purchase orders came after the start of litigation and therefore was insufficient to give rise to any obligation on the part of IEC.

Anticipatory repudiation of a contract occurs where "one party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other." *American Bronze Corp. v. Streamway Products*, 8 Ohio App. 3d 223, (8th App. Dist. 1982) (internal quotations omitted).  Under the Uniform Commercial Code, the repudiating party may revoke its repudiation so long as the non-breaching party has not materially changed its position. Ohio Rev. Code § 1302.69(A).  Otherwise, the non-breaching party has the right to elect, at its sole option and discretion,

> between canceling the contract and continuing it. ... If he decides to close the contract and so conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages. ... If he

> elects instead to continue the contract, the obligations of both parties remain in force.

*Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 603 (6th Cir. 1988) (internal quotations omitted). Once the non-breaching party elects to consider the contract canceled and files suit to recover damages, the repudiating party no longer can revoke its repudiation to reinstate the contract. *Id.* at 604 (filing of complaint constitutes material change in position); *Gilmore v. Am. Gas Machine Co.*, 70 Ohio L. Abs. 569 (Franklin Cty. 1952) (same).

When Hurley anticipatorially repudiated the Purchase Order 1155 by deeming it "indefinitely postponed" and then cancelled, IEC remained ready to continue performance so long as Hurley would assure his performance by paying C.O.D. (Stepnowski Aff. ¶¶ 10-13.) Instead, Hurley cancelled all of the remaining purchase orders. (*Id.* at ¶ 14.) It was only at that point that IEC elected to pursue recovery of its damages through litigation (*Id.* at ¶ 15.) IEC's decision constituted a material change in position that rendered ineffective any subsequent attempt by Hurley to revoke its repudiation of the parties' agreement. Hurley cannot now point to its untimely attempt to cure its breach as the basis of a claim that IEC somehow has failed to mitigate the damages flowing from Hurley's initial breach. As such, Hurley's motion for partial summary judgment should be denied.

### 2. **Hurley Cannot Prove That IEC's Conduct Was Not Commercially Unreasonable.**

Finally, even if the April 15 settlement offer was admissible (which it is not) and even if Hurley could have reinstated the purchase orders after IEC filed suit (which it cannot), Hurley's motion still would fail because it cannot show that IEC's actions were "commercially unreasonable" under all of the facts and circumstances existing at the time. *See Young*, 58 Ohio St. 3d at 244 (party asserting failure to mitigate must show non-breaching party acted "in a commercially unreasonable fashion"); *Commonwealth Propane Co. v. Petrosol Int'l., Inc.*, 818

F.2d 522, 531 (6th Cir. 1987) ("Ordinary and reasonable care, diligence and prudence are the measure of the duty.") (citations omitted).  The non-breaching party's conduct "must be judged in the light of one viewing the situation at the time the problem was presented."  *Cuyahoga Metropolitan Housing Authority v. United States*, 65 Fed.Cl. 534, 546, 2005 U.S. Claims LEXIS 152 (Ct. Fed. Cl., June 2, 2005).  It would have been inherently **im**prudent and **un**reasonable for IEC to accept the ultimatum presented in Hurley's April 15 settlement offer.

The Uniform Commercial Code expressly permits a party to demand "adequate assurance of due performance" from the other party when "reasonable grounds for insecurity arise with respect to the performance of either party."  Ohio Rev. Code § 1302.67(A).  Where, as here, both parties are merchants, "the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards," including the obligation of good faith. Ohio Rev. Code § 1302.67(B) and Official Comment 3.  Whether a party's grounds for insecurity are reasonable in view of commercial standards is a question of fact.  *American Bronze*, 8 Ohio App. 3d at 230.  Because Hurley fails to establish both the applicable commercial standards and that IEC's conduct fell short of those standards, a material question of fact exists that precludes entry of summary judgment in favor of Hurley.

Despite Hurley repudiation of the initial purchase orders, IEC remained willing to continue its performance under those agreement, provided that Hurley would give an adequate assurance of its performance of its payment obligation by taking delivery of the control systems C.O.D. (Stepnowski Aff. ¶¶ 10-13, 17.)  IEC's request for such assurances was inherently reasonable in light of Hurley's prior repudiation of the purchase orders, its payment history, and its threat of bringing counterclaims against IEC.  As the official comments to this section of the

Ohio Revised Code explain, assurances of the type sought by IEC are particularly warranted when a seller has reason to believe that it is dealing with a "shaky buyer":

> A seller needs protection not merely against having to deliver on credit to a shaky buyer, but also against having to procure and manufacture the goods, perhaps turning down other customers. Once he has been given reason to believe that the buyer's performance has become uncertain, it is an undue hardship to force him to continue his own performance.

(Official Comment 1 to Ohio Rev. Code § 1302.67.)   But despite IEC's earlier request for reasonable assurances, Hurley demanded payment terms of "net 30," and further demanded that IEC accept those terms the close of the following business day.   (Stepnowski Aff. ¶ 16.) Hurley's refusal to provide the assurances IEC sought precludes it from now claiming that IEC acted in a "commercially unreasonable" manner when it declined Hurley's offer to reinstate the purchase orders it previously had repudiated.   *See* Ohio Rev. Code 1302.67(D) (failure to provide requested assurances within reasonable time "is a repudiation of the contract").

In view of Hurley's conduct up to that point and the significant amount of money at stake, IEC was not obliged to accede to Hurley's demand that IEC sell him goods on "net 30" payment terms.  This is especially true since Hurley had already once repudiated its obligations under the purchase orders and had not been paying earlier invoices on time.  (Stepnowski Aff. ¶¶ 10-11, 14, 17.)  Moreover, the parties were in litigation because Hurley had been falsely labeling IEC's products as being "Manufactured by Hurley & Associates, Inc.," and Thomas Hurley was claiming co-inventorship rights in technology developed and patented by IEC.  (*Id.* at ¶¶ 5-6, 7.) Under such circumstances, there is and should be no rule that forces an innocent party to sell to a breaching buyer.  The law is clear: "Where a choice has been required between two reasonable courses, the person whose wrong forced the choice cannot complain that one rather than the other was chosen."  *Cuyahoga Metropolitan Housing Authority v. United States*, 65 Fed. Cl. 534, 546 (Ct. Fed. Cl. 2005).

Hurley cannot breach its contracts with IEC, and then force IEC to deal with Hurley on terms unilaterally imposed by the breaching buyer, terms that fail to protect the seller from further acts of repudiation.  No facts or authority support this position.  Rather, while it is not IEC's burden, the facts of record establish that IEC acted reasonably by attempting to pursue a resolution under which it could be assured that the breaching buyer would pay for the goods IEC was to deliver.  (See Stepanowski Affidavit, ¶¶17, 18.)

Under these facts and circumstances, there can be no doubt that Hurley has failed to meet its burden to show that IEC did not act in a commercially reasonable manner.

## IV.  <u>CONCLUSION</u>

Hurley's motion never should have been filed.  It is not only premature, but obviously both unsupported and deficient.

Specifically, IEC has shown that Hurley's motion for partial summary judgment is insufficient as a matter of law and as a matter of fact.  The Motion is procedurally defective because it addresses only a portion of IEC's damages claims in Count I and II of the First Amended Complaint.  Rule 56 does not authorize such a filing.  Moreover, because the April 15 settlement offer on which Hurley bases its entire motion was made in the course of settlement negotiations, it is inadmissible under Rule 408.  Furthermore, because IEC had already materially changed its position by filing suit on the disputed purchase orders, Hurley's attempt to revoke its prior anticipatory repudiation of those purchase orders was legally ineffective.  Finally, Hurley does not meet its burden of establishing that IEC acted in a commercially

unreasonable manner in view of Hurley's prior breach of contract and Hurley's refusal to give adequate assurances of its performance going forward.   The Court therefore should deny the motion for partial summary judgment.

Respectfully submitted,

/s/Anthony J. LaCerva
George L. McGaughey (0008503)
 gmcgaughey@mcdonaldhopkins.com
Anthony J. LaCerva (0032876)
 alacerva@mcdonaldhopkins.com
David T. Movius (0070132)
 dmovius@mcdonaldhopkins.com
600 Superior Avenue, E.
Cleveland, Ohio 44114-2653
Phone: (216) 348-5400
Facsimile: (216) 348-5474

*Attorneys for Plaintiff*
*Innovative Engineering & Consulting Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this case has been assigned to the "standard" track and the foregoing

Memorandum of Plaintiff Innovative Engineering & Consulting Corp. in Opposition to

Defendants' Motion for Partial Summary Judgment adheres to the page limitations set forth in

Local Rule 7.1(f).


/s/Anthony J. LaCerva
One of the Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2006, the foregoing *Memorandum of Plaintiff Innovative Engineering & Consulting Corp. in Opposition to Defendants' Motion for Partial Summary Judgment* was served electronically.  Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Anthony J. LaCerva_____
One of the Attorneys for Plaintiff