# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **INNOVATIVE ENGINEERING &** | : | **CASE NO. 1:05CV0764** |
| **CONSULTING CORP.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| | : | |
| **HURLEY & ASSOCIATES, INC., et al.,** | : | <u>**OPINION & ORDER**</u> |
| | : | |
| **Defendants.** | : | |

On March 21, 2005, Innovative Engineering & Consulting Corp. ("IEC"), Plaintiff, filed the

above-captioned case against Hurley & Associates, Inc., HurleyIR, Inc., and Thomas L. Hurley

(referred to as "Hurley"), Defendants, stating numerous claims, including claims for breach of

contract, promissory estoppel, tortious interference with business relations, false advertising and

false designation of origin under the Lanham Act, unfair competition, and claims seeking declaratory

judgments as to the rightful inventor of an alleged invention which is the subject of a pending patent

application and as to IEC's right to sell its products to certain end users.[1]

On June 1, 2005, Hurley filed a motion to dismiss Count VI of the original complaint (Doc. 11) (the declaratory judgment against himself as an out-of-state defendant as to whether he is a co-inventor), on grounds that the Court may not exercise personal jurisdiction over him.  Defendants also filed an answer and counterclaim. The counterclaim alleges one count of unfair competition under the Lanham Act.

On November 11, 2005, Plaintiff filed a motion for leave to file an amended complaint.  The motion for leave to amend the complaint was granted, and on January 13, 2006, Plaintiff amended the complaint, adding a claim for false advertising under the Lanham Act and clarifying that Thomas Hurley is being sued in his individual capacity as to Counts IV, V, VI and VII.[2]  Because the First Amended Complaint mooted the then-pending motion to dismiss, that motion was termed.

On January 17, 2006, the corporate Defendants filed a motion for partial summary judgment, asking the court to dismiss the breach of contract and promissory estoppel claims in the First Amended Complaint.  (Doc. 39).  It has been fully briefed.  As discussed in Section III below, that motion is hereby **GRANTED in part** and **DENIED in part**.

---

[1]  The Court is at a loss to understand how the declaratory judgment claim in Count VII of the amended complaint is even arguably ripe.  While that count purports to address an "inventorship" question, it discusses only a pending patent application, *not* an issued patent. Until the Patent and Trademark Office determines that an invention actually exists, there is no controversy over inventorship which this Court could address.  This Court cannot anticipatorily declare the validity or ownership of a patent which has not yet issued.  Because this issue is not raised by the parties' current motions, the Court does not finally resolve this issue, though it intends to do so before much additional effort is expended on this claim.

[2]  These counts are: Count IV: False Designation of Origin, Count V: False Advertising, Count VI: Unfair Competition and Count VII: Declaratory Judgment as to whether Hurley is an Inventor/Co-Inventor of patent.

On January 30, 2006,  Hurley filed a motion to dismiss the counts asserted against him in the First Amended Complaint, again on jurisdictional grounds (Doc. 40), and it has been fully briefed. As discussed in Section II below, Hurley's motion to dismiss is hereby **DENIED**.

I.     FACTS

Plaintiff is an Ohio corporation with its principal place of business in Cleveland, Ohio.  It is engaged in the manufacture of thermal imaging component products.  Richard Pettegrew is the Chief Executive Officer and Vice President, and Richard Stepnowski is the Chief Financial Officer.

Defendants Hurley & Associates and Hurley IR, Inc. (collectively, "the Hurley Companies"), are Maryland corporations with their principal places of business in Mt. Airy, Maryland.  The Hurley Companies assemble various thermal imaging components into end-product surveillance and security systems and distribute those systems to retailers and end-users.  Defendant Thomas Hurley is a citizen of Maryland and is the owner and an officer of both corporations.

Plaintiff alleges the following facts:

In 2001, the parties began a relationship whereby Plaintiff would supply thermal imaging control panels to Defendants for use in the surveillance systems distributed by Defendants. Defendants would submit purchase orders to Plaintiff, and Plaintiff would then submit purchase order acceptances.  The orders described various components to be manufactured by Plaintiff. Defendants would then combine Plaintiff's components with components procured from other sources and distribute products to end-users.

Since 2001, the parties have conducted approximately 625 transactions, resulting in 2.3 million dollars having been paid by Defendants to Plaintiff for purchases of its equipment. Stepnowski Aff. ¶2-3. Hurley was personally involved in these transactions.  He visited Ohio during

the relevant time period and participated in many telephone and written communications with IEC, including several initiated by him.  Pettegrew Aff. ¶9.

In late 2004 and early 2005, Defendants and Plaintiff entered into a series of contracts for the purchase of thermal imaging components.  Plaintiff performed all of its obligations under these contracts by manufacturing the components ordered, and by being prepared to proffer delivery of them to Defendants.  In early 2005, Plaintiff alleges that Defendants cancelled and breached these contracts by refusing to accept delivery of or pay for the components, causing substantial damage to Plaintiff.

Plaintiff also alleges that Defendants believe - wrongly- that they are the only entities who can sell Plaintiff's products.  Also, Plaintiff alleges that Hurley avers that he is a co-inventor of certain of Plaintiff's products.  Furthermore, Plaintiff alleges that Defendants have placed the "Hurley" name on IEC's products identifying "Hurley" as the manufacturer and distributor, despite Plaintiff's demand that it cease and desist that practice.

Lastly, Plaintiff alleges that Defendants have made false representations to distributors and end-users regarding Hurley's expertise and the role of Defendants in the design and manufacture of goods that were designed and manufactured exclusively by Plaintiff.  Plaintiff alleges that such misrepresentations were made on Defendants' website.

On March 21, 2005, Plaintiff filed this case asserting eight claims:

1) Breach of Contract
2) Promissory Estoppel
3) Tortious Interference with Business Relationship
4) False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A)
5) False Advertising, 15 U.S.C. § 1125(a)(1)(B)
6) Unfair Competition
7) Declaratory Judgment against Thomas Hurley as to whether he is co-inventor

4

8) Declaratory Judgment against Hurley companies as to IEC's commercial rights.

On April 15, 2006, Defendants faxed the following offer to Plaintiff:

We are sorry that we have not reached a global resolution of our differences. We continue to believe that a global solution is in everyone's best interests, and we are confident that we have been more than reasonable under the circumstances in our attempts to reach a resolution. Because we have not reached a global agreement, Hurley hereby requests that you deliver immediately the product covered by the disputed purchase order numbers 18, 21, 23, and 1155 in their entirety. Hurley agrees to accept delivery of the entire quantity of products covered by the disputed purchase orders, in accordance with the terms set forth in the original purchase orders from Hurley. Please let me know by close of business on Monday, April 18th whether or not you can provide the product. This offer to renew the purchase order is intended to resolve this portion of your dispute, to ensure that you receive the expected funds under the purchase orders, and to eliminate any alleged damages you claim in your lawsuit to have suffered. If you reject this offer, you proceed at your own risk, and Hurley will make arrangements to obtain replacement product from an alternative source. If you have any questions about our offer to accept the product in accordance with the terms of the original purchase, please do not hesitate to contact us. We look forward to hearing from you. Tom and Lisa Hurley

On April 18, 2006, Plaintiff rejected this offer.

## II.  DEFENDANT HURLEY'S MOTION TO DISMISS

On Defendant's Motion to Dismiss, the claims at issue are Counts IV, V, VI and VII as against Thomas Hurley, individually. For the following reasons, Hurley's Motion to Dismiss (Doc. 40) is hereby **DENIED**.

### A.      Choice of Law and Standard of Review

Because one of Plaintiff's claims "arises under" federal patent law, this court must apply

Federal Circuit law to determine personal jurisdiction.[3]  Imperial Products, Inc. v. Endura Products, Inc., 109 F.Supp.2d 809, 810 (S.D. Ohio 2000) (citing Akro Corp. V. Luker, 45 F3d 1541, 1543 (Fed. Cir. 1995)).

When a Court determines the issue of personal jurisdiction based on written submissions alone, without a hearing, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  See United States v. Ziegler Bolt and Parts Co., 111 F.3d 878, 880 (Fed. Cir. 1997).  The plaintiff may not stand on its pleadings, but must set forth, by affidavit or otherwise, specific facts showing that the Court has jurisdiction.  Id.  A Court must consider the pleadings and affidavits in the light most favorable to the plaintiff.  Id.

Under Federal Circuit law, the Court conducts a two-step process in determining whether it has personal jurisdiction over a non-consenting defendant outside the boundaries of the forum. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed.Cir. 1998).  "First the district court determines whether a provision [of the state long-arm statute] makes the defendant amenable to process, which usually depends on whether the 'defendant could be subjected to jurisdiction of a court of general jurisdiction in the state in which the district is located.'" Id., quoting Fed.R.Civ.P. 4(k)(1)(A).     First, it must look to Ohio's "long-arm" statute, Ohio Rev. Code §2307.382.  Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed.Cir. 1995).  "Second, the district court ensures that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice' that are embodied in the Due Process Clause" of the Fifth Amendment.  Red Wing Shoe Co.,

---

[3]  The Court applies Federal Circuit law at this stage because Plaintiff purports to assert a patent claim and Defendants do not contest the characterization of that claim, even though the claim is based on a patent that has not yet issued, see infra, n.1.  Regardless, however, Federal Circuit personal jurisdiction law does not vary significantly from Sixth Circuit personal jurisdiction law such that the choice of law would materially affect the outcome of this order.

148 F.3d at 1358, quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Applying this two-step process, the Court will first determine whether Hurley is amenable to suit under Ohio's long-arm statute.  If so, the Court then will determine whether it may exercise personal jurisdiction over him, consistent with the requirements of federal due process, as articulated by the Federal Circuit.

### 1.    Ohio's Long-Arm Statute

The Ohio long-arm statute provides, in relevant part, that an Ohio court "may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's . . . [t]ransacting any business in this state. . . .'" Ohio Rev.Code Ann. §2307.382(A)(1) (2006).  Long-arm jurisdiction over a defendant exists if he regularly does or solicits business in Ohio, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed in this state.  Schwanger v. Munchkin, Inc., 217 F.3d 854, 1999 WL 820449 (Fed.Cir. Oct. 7, 1999). The Federal Circuit interprets this "transacting any business" prong of Ohio's long-arm statute broadly, to "extend to the greatest reach consistent with due process." Akro Corp. v. Luker, 45 F.3d at 1543.

Plaintiff contends that Hurley has substantial contacts with the State of Ohio.  These contacts include:

1) Hurley conducted approximately 625 transactions with Plaintiff that resulted in over 2.3 million dollars being paid by Hurley to Plaintiff.  Stepnowski Aff. ¶¶2-3.

2) Hurley stated in an affidavit that he provided $20,000 in software development funds to Plaintiff.  These funds were used by Plaintiff to refine a software package and to write computer code.  Hurley Aff. ¶¶ 6, 7.  Hurley allegedly relies on this business transaction as a basis for his claim

7

that he is a co-inventor of Plaintiff's product.  The bulk of the activities relating to this transaction, according to Plaintiff, occurred in Ohio.

3) Hurley claims to have an interest in IEC's intellectual property, all of which was designed, developed and manufactured in, and is distributed and marketed from, Ohio.  In making his claim to rights in Plaintiff's intellectual property, allegedly Hurley made threatening phone calls into Ohio, sent written demands into Ohio, and he allegedly has made various misrepresentations to persons in Ohio, through use of the Hurley Companies' website and otherwise, about his status as a "co-inventor" of pending Patent Application No. 10/390,225.  Stepnowski Aff. ¶7.

While Hurley does not deny the existence of most of these contacts (though he disputes the disparaging characterizations Plaintiff gives them), Hurley still argues that he does not have sufficient "minimum contacts" with Ohio for the Court to exercise personal jurisdiction over him. He says he is a resident of Maryland and has never lived in Ohio.  He has never owned property in Ohio, is not professionally licensed in Ohio, does not hold any Ohio licences or certifications, has never paid income taxes or real estate taxes to the State of Ohio, does not regularly travel to Ohio, and does not engage in systematic or continuous activities in the State of Ohio.  Hurley Aff. ¶¶ 1-5. Furthermore, he states that his activities in connection with the invention at issue (Count VII) primarily took place in Maryland or states other than Ohio.  Id. at ¶ 6.  Finally, he asserts that his only contact with Plaintiff was in his capacity as an officer and/or agent of defendant Hurley Companies.  Id. at ¶ 7.

Because Hurley asserts that his contacts with Plaintiff were in his capacity as an officer and/or agent of the Hurley Companies, he argues that the fiduciary shield doctrine prevents the exercise of personal jurisdiction over him.  That doctrines states: "if an individual has contact with

a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." <u>Marine Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 902 (2d Cir. 1981). Hurley argues that he was acting as an agent of the defendant companies in his dealing with Plaintiff and is therefore shielded from jurisdiction.

As Plaintiff correctly points out, however, the Sixth Circuit, overruled, or at least severely limited, the application of the fiduciary shield doctrine in its decision in <u>Balance Dynamics Corp. v. Schmitt Industries, Inc.</u>, 204 F.3d 683, 697-98 (6th Cir. 2000) cert. denied 531 U.S. 927 (Oct. 10, 2000). That case involved a Lanham Act false advertising claim by a manufacturer of industrial products against a competitor, its president, and its sales manager. The Sixth Circuit held that the mere fact that the actions connecting the individual defendants to the state were undertaken in an official rather than a personal capacity did not preclude the exercise of personal jurisdiction over those defendants. The court stated:

> [T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is *actively* and *personally* involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether []he personally availed [him]self of the forum and the reasonably foreseeable consequences of that availment.

<u>Balance Dynamics</u> at 698 (emphasis added).

Here, there is no doubt that Plaintiff has alleged that Hurley was "actively" and "personally" involved in all aspects of the business relationship between IEC and the Hurley Companies. Indeed, Hurley himself alleges that he was personally involved in the product which is the subject of IEC's patent application. Thus, the question of whether this Court may exercise personal jurisdiction over

9

Hurley turns, *not* on whether he acted in his capacity as an officer of the Hurley Companies when dealing with IEC, but on whether his own contacts with the state of Ohio are such that due process permits the exercise of personal jurisdiction over him.  Id. at 698; see also Akro Corp., 45 F.3d at 1543 (under the "transacting any business" prong of the Ohio long-arm statute, the "sole inquiry thus becomes whether the trial court can exercise personal jurisdiction over [the defendant] in this case consistent with due process.").

## 2.    Federal Due Process

Under Federal Due Process, the Court must consider a three-part inquiry to determine if there is "specific" personal jurisdiction[4] over Hurley: (1) whether Hurley purposely directed his activities at residents of Ohio; (2) whether Plaintiff's claims arise out of or relate to Hurley's contacts with Ohio; and (3) whether the exercise of personal jurisdiction over Hurley is fair and reasonable. Imperial Products at 814, citing Genetic Implant Systems, Inc. V. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed.Cir. 1997).  If these requirements are met, then the Court's exercise of personal jurisdiction does not offend the Due Process Clause. Id., citing Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995).

Upon review, the Court concludes that Plaintiff has made a prima facie showing of personal jurisdiction which is more than sufficient to withstand Hurley's motion to dismiss.  As to the first

---

[4]  There are two grounds upon which the Court may exercise jurisdiction over a defendant.  First, there is general jurisdiction, which arises when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Kemper v. Saline Lectronics, 348 F.Supp.2d 897 (N.D.Ohio 2004) (citing Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).  In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to defendant's contacts with the forum."  Specific jurisdiction may be based on a single act.  Specific jurisdiction is applicable in this case.

part of the due process analysis, the record contains ample evidence to support a finding that Hurley has purposely directed his business activities at residents of Ohio.  Plaintiff relies on affidavits of Pettegrew, its Vice President and Chief Executive Officer, and Stepnowski, its Chief Financial Officer.  According to the affidavits, the contacts include approximately 625 transactions with Plaintiff that resulted in 2.3 million dollars paid by the Hurley Companies to Plaintiff.  Hurley himself allegedly provided $20,000 to Plaintiff for software development funds, a transaction Hurley relies upon as a basis for his claim that he is a co-inventor of one of Plaintiff's thermal imaging products.  Plaintiff also alleges (and Hurley does not dispute) that Hurley made phone calls to IEC and sent written demands claiming his interest in Plaintiff's intellectual property. In light of this evidence, Plaintiff has made a prima facie showing that Hurley purposefully directed business activities at the State of Ohio.

Regarding the second part of the due process analysis, the Court concludes, based on Hurley's activities,  that Plaintiff's claims (Counts IV, V and VI) "arise out of relate to" its contacts with Hurley.[5]  As to Count VII, the count seeking declaratory judgment against Hurley regarding his alleged status as an inventor/co-inventor of the subject of IEC's pending patent application, Hurley himself has stated under oath that he provided $20,000 to Plaintiff to develop that particular component and he bases his claim of ownership upon that transaction.  Hurley also made phone calls to Plaintiff, sent written demands and apparently made various representations to third parties about

---

[5]  There is another reason personal jurisdiction is proper.  Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their employment. <u>Donsco, Inc. v. Casper Corp.</u>, 587 F.2d 602, 606 (3d Cir. 1978). Any individual can be liable for trademark infringement or unfair competition under the Lanham Act. 15 U.S.C. §§ 1114, 1125(a).  <u>Two Men and a Truck/International, Inc.</u>, 1995 WL 549278, *4 (W.D.Mich.).

his status as a "co-inventor" of Plaintiff's products.

Given the nature of IEC's claims and Hurley's conduct, the Court finds that there is a connection between Hurley's contacts with Ohio and the Plaintiff's claims.

Finally, the Court concludes that the exercise of personal jurisdiction over Hurley is fair and reasonable.  If the other requirements have been satisfied, only in a "rare situation" will the exercise of personal jurisdiction over an out-of-state defendant be unfair or unreasonable. Imperial Products at 816.  Consequently, the burden rests "on the party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable."  Id. (citing 3D Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1379-80 (Fed. Cir. 1998).

In the present case, Hurley has not met his burden of establishing a "compelling case" that would "render jurisdiction unreasonable[.]" Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998).  As set forth above, Hurley's only arguments are that he lacks sufficient contacts with Ohio to justify the exercise of personal jurisdiction and that he was not acting in a personal capacity in his dealings with IEC.  Given the number and scope of the transactions between the parties, the Court easily rejects these arguments.  The Court finds nothing unfair or unreasonable about requiring him to defend against a lawsuit in this state.  Accordingly, Hurley's Motion to Dismiss pursuant to Rule 12(b)(2) is denied.

## III.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.    Law

The Court relies on the facts presented above.   As this is a summary judgment motion, the Court may also refer to affidavits, depositions, and interrogatories.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

12

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule

56.  The burden may be satisfied by presenting affirmative evidence that negates an element of the

non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's

case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The substantive law identifies which

specific facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To avoid

summary judgment, the non-movant must "make a showing sufficient to establish the existence of

an element essential to the party's case, and on which that party will bear the burden of proof at trial."

Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-

59 (1970)).  However, the non-movant must "do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties

will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S.

at 247-48.

**B.      Breach of Contract**

Defendants argue that Plaintiff failed to mitigate its damages when it rejected Defendants'

13

offer of April 15, 2005.  Plaintiff responds with several arguments.  First, it argues that Defendants'
motion for partial summary judgment is procedurally improper because it does not address the
entirety of IEC's claims for breach of contract and promissory estoppel.  Plaintiff contends that
Defendants' argument relates only to *some* of the damages Plaintiff seeks, but does not address
incidental and consequential damages or lost profits.  Because Defendants' argument does not relate
to *all* of the damages Plaintiff seeks on Counts I and II, Plaintiff argues that Defendants cannot seek
summary judgment as to those counts.  Second, Plaintiff argues that Defendants' offer of April 15,
2005 is a settlement offer and, pursuant to Rule 408 of the Federal Rules of Evidence, a settlement
offer is not admissible and cannot be considered as to mitigation of damages.  Because that offer is
Defendants' only evidence of Plaintiff's alleged failure to mitigate, Plaintiff contends that
Defendants' motion must fail.  Third, Plaintiff argues that, because Defendants repudiated the
contract by cancelling it prior to delivery of the goods, Defendants could not then revoke its

14

repudiation (by way of a settlement offer) once the Plaintiff has materially changed its position.[6]  <u>See</u> Ohio Rev. Code §1302.69 (UCC2-611); <u>Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.</u>, 862 F.2d 597, 604 (6th Cir. 1988).  Lastly, Plaintiff argues that the question whether its rejection of Defendants' offer was commercially unreasonable (which it must be in order for the Court to find that Plaintiff failed to mitigate its damages) is an issue of fact for the jury, precluding summary judgment on this issue.

In reply, Defendants argue that its offer was for the full price of the purchase orders, which, Defendants assert, is Plaintiff's maximum recovery for Counts I and II.  Defendants argue that the full price of the orders necessarily includes incidental and consequential damages and lost profits and, therefore, its motion is not procedurally improper.  In addition, Defendants argue that its offer is not precluded by Rule 408 because it is an "unconditional offer" and, therefore, not a "settlement

---

[6]  Plaintiff cites to Ohio Rev.Code 1302.69 which states:

(A) Until the repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has since the repudiation cancelled or materially changed his position or otherwise indicated that he considers the repudiation final.

Plaintiff contends that it materially changed its position when it filed this lawsuit and cites to <u>Canderm</u> for that proposition.  Because Plaintiff's argument is clearly without merit, the Court addresses it only briefly.  First, as Defendants argue, Plaintiff misses the point with its argument because the section of the UCC on which Plaintiff relies is not applicable to a mitigation analysis; it applies to the question of whether a breach has occurred.  In any event, <u>Canderm</u> likely is distinguishable in that Canderm filed a lawsuit *and* the Court granted an injunction requiring the defendant to comply with the contract.  The <u>Canderm</u> Court determined that obtaining an injunction on a complaint might constitute a material change in position.  <u>Id.</u> at 604.  In this case, it is likely that Plaintiff, solely by filing this lawsuit, did not materially change its position.  The complaint was filed shortly after the breach, no injunction was requested, and the parties had not yet had a conference with the Court when the Defendant extended its offer.

offer" under Rule 408.[7]  Alternatively, even if a "settlement offer," Defendants argue that Rule 408

does not exclude it because it is the *offeror* who is attempting to introduce it.  Lastly, Defendants

also argue that Plaintiff's argument regarding revocation of an anticipatory repudiation is irrelevant

to a mitigation of damages issue and that Plaintiff's actions were commercially unreasonable as a

matter of both law and logic.

> Rule 408 states:
>
>> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible. *** This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

As Rule 408 provides, the types of offers described in rule are not admissible "to prove

liability for or invalidity of the claim or its amount," but Rule 408 "does not require exclusion when

the evidence is offered for another purpose. . . ."  Plaintiff argues that Defendants attempt to admit

evidence of failure to mitigate to prove the "amount" of the claim, and the evidence, therefore, is

excluded by Rule 408.  In support of that assertion, Plaintiff cites a case from the Second Circuit in

which the Court found, without explaining its reasoning or citing any authority, that "[e]vidence that

demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer

was made in the course of compromise negotiations, it is barred under the plain language of Rule

---

[7] The Court does not address Defendants' argument that its offer constituted only an "unconditional offer" because its finds that the offer is admissible for other reasons.

16

408." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 826-27 (2d Cir.1992).  Neither party cites any Sixth Circuit case law that addresses this issue, but at least one other circuit - the Fifth Circuit - has reached the opposite conclusion and found that evidence of settlement negotiations admitted to determine a plaintiff's failure to mitigate *is* permissible under Rule 408.  Bhandari v. First Nat'l Bank of Commerce, 808 F.2d 1082, 1103 (5th Cir. 1987) ("The disputed evidence was admitted to determine whether [the plaintiff] failed to mitigate damages.  This purpose is permissible under Rule 408."), citing Urico v. Parnell Oil Co., 708 F.2d 852, 854-55 (1st Cir. 1983) (finding evidence from a settlement negotiation introduced to excuse a party's failure to mitigate was not barred by Rule 408)).

This Court is persuaded that the Fifth Circuit's conclusion is the correct one - i.e., that evidence of settlement negotiations admitted to determine a plaintiff's failure to mitigate is directed not to proving the "amount of the claim" but for "another purpose" and is permissible under Rule 408.  Although evidence of failure to mitigate may affect what Plaintiff may *ultimately* be entitled to recover, it is not admitted to prove the amount of the claim itself - in this case, the contract price or the value of the purchase orders (an amount the parties do not dispute).  Admitting evidence relating to a plaintiff's failure to mitigate, moreover, does not undermine the rationale of Rule 408, which is, in part, to promote the public policy favoring compromise and settlement of disputes.  See Fed. R. Evid. 408 advisory committee's note.

Even if the Court determined that this offer was being admitted to prove the amount of the claim, Defendants argue that Rule 408 still would not bar its admission because it is the *offeror* who seeks to introduce evidence of his own offer.  In response, Plaintiff again cites the Second Circuit's decision in Pierce to support its argument that Rule 408 bars evidence of settlement offers, even

17

when the offeror is the one who seeks to introduce evidence of the offer.  See Pierce, 955 F.2d at 827-28 ("We believe that admission into evidence of settlement offers, *even if by the offeror*, could inhibit settlement discussions and interfere with the effective administration of justice." (emphasis added)).  Without citing any support, Plaintiff makes the broad assertion that the view in Pierce "represents the prevailing law of the land on this issue." (Pl. Sur-Reply at 5).  Treatises and practices guides addressing the issue, however, indicate otherwise.  See 23 Charles Alan Wright & Kenneth W. Graham Jr., Fed. Prac. & Proc Evid. § 5303 (current through 2006 update) ("where the person who made the offer wants to introduce evidence of his own offer, there is no policy reason to exclude the evidence under Rule 408 because a person will not be deterred from making offers of compromise by a rule permitting him to use the offer to his own advantage.") (citing 2 Weinstein & Berger, Weinstein's Evid., 1975, p. 408-418).  Again, neither party has cited any Sixth Circuit cases addressing this issue, but Defendants cite a case from the Eighth Circuit in support of its argument that Rule 408 does not bar a party from introducing evidence of its own compromise efforts.  See Crues v. KFC Corp., 768 F.2d 230, 233-34 (8th Cir. 1985) (finding that "admissions of compromise against the offeree does not violate either the spirit or the letter of Rule 408.")

Contrary to Plaintiff's bald assertion, the prevailing view appears to be that Rule 408 does *not* bar an offeror from introducing evidence of his own offers.  Significantly, the Court in Pierce based its conclusion on the reasoning that admitting a settlement offer, even by the offeror, potentially would result in disqualification of attorneys who would be forced to testify as to the substance of the offer, which, the Pierce Court assumed, likely would be disputed.  Pierce, 955 F.2d at 828.  In the present case, the offer was made not by attorneys but by the principles of the companies, and there is no dispute as to the substance of the offer.  The reasoning in Pierce,

18

therefore, even if the prevailing view, is not applicable in the circumstances of this case.  For these reasons, the Court concludes that Defendants' offer of April 15, 2005 is not barred by Rule 408.[8]

Plaintiff also claims that Defendants' Motion for Partial Summary Judgment fails because Defendants have not established that Plaintiff's rejection of Defendants' offer was commercially unreasonable.  Although the question of whether a party has acted in a commercially reasonable manner is *usually* a question of fact left for the jury, the Court concludes, after considering the unique circumstances of this case, that Plaintiff's actions in this case were commercially unreasonable as a matter of law.  In other words, no reasonable juror could conclude that Plaintiff's rejection of Defendants' offer to pay *full price* for Plaintiff's *customized* equipment, pursuant to terms on which the parties had *already agreed*, only a *short time* after the breach allegedly occurred, was a commercially reasonable decision.

In this case, Plaintiff touts the fact that "IEC's componentry was the only customized and proprietary piece of the system assembled by Hurley."  (Pl. Opp. at 3).  In light of the fact that it was customized and specially manufactured to Defendants' specifications, it is commercially unreasonable for Plaintiff to believe it could sell such a specialized, unique product to another buyer; indeed, it admits it has been unable to do so.  In the face of an offer to pay full price, and on the terms to which it already agreed, Plaintiff decided to risk that possibility.  Based on those unique circumstances, this Court finds that no reasonable juror could conclude that Plaintiff acted in a

---

[8] Plaintiff also makes the feeble argument that, even if Rule 408 does not bar the admission of the offer, it is inadmissible as hearsay and irrelevant.  First, the offer is not hearsay because it is not offered for its truth, but to demonstrate that Plaintiff had an opportunity to mitigate its damages that it did not pursue, and likely would fall under the business records exception to the hearsay rule in any event.  For the same reason, it is clearly relevant to the issue of damages.

commercially reasonable manner.

Although the Court concludes that Defendants' offer of April 15, 2005 is admissible and that Plaintiff's rejection of that offer was commercially unreasonable as a matter of law, Defendants are not entitled to judgment as to Count I (see below regarding Count II) because their motion is procedurally improper.  Plaintiff is correct that summary judgment is not appropriate for only a portion of a single claim.  In this case, the Court's determination only precludes Plaintiff from recovering damages for the alleged breach of the contract; it does not preclude recovery of other damages, such as incidental damages.[9]  Although those damages are likely minimal given the small amount of time between the alleged breach and the unreasonable rejection of the opportunity to mitigate, the Court agrees that Plaintiff's claim for incidental damages is not subsumed within the price of the purchase orders, as Defendants contend.

The Court, therefore, **DENIES** Defendants' Motion for Partial Summary Judgment as to Count I of Plaintiff's First Amended Complaint, without prejudice to renewal if Plaintiff either concedes that no incidental or consequential damages can be established or Plaintiff fails to proffer proof of such damages.

### C.    Promissory Estoppel

Plaintiff also asserts a promissory estoppel claim to recover damages as a result of Defendants' cancellation of the purchase orders in late 2004 and in early 2005, which are the same purchase orders at issue in its breach of contract claim.  Inasmuch as the Court has found that

---

[9]  Pursuant to Ohio Rev. Code §1302.84, incidental damages include: "any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

Plaintiff is limited to only incidental (and, possibly, consequential) damages, Plaintiff's promissory estoppel claim must fail as a matter of law.  See Zenith Electronics Corp. v. WH-TV Broadcasting Corp., No. 01C4366, 2003 U.S. Dist. WL 22284326, at *4 (N.D. Ill. Oct. 2, 2003) (citing Quake Constr., Inc. v. American Airlines, Inc., 565 N.E.2d 990, 1004 (Ill. 1990) (injury is an element of promissory estoppel.)

Furthermore, the Sixth Circuit has stated that "where the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable."  General Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1042 (6th Cir. 1990)(quoting the district court's decision, 703 F.Supp. 637, 647 n.10).  The performance which makes up Plaintiff's detrimental reliance is the same performance that forms Plaintiff's consideration for the written contract.  The damages sought by Plaintiff, for the most part, arise out of the actions of the parties pursuant to the purchase orders in late 2004 and in early 2005.  Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." General Aviation at 1042 (citing Walker v. KFC Corp., 728 F.2d 1215, 1220 (9th Cir. 19840)).  Consequently, the doctrine of promissory estoppel is not applicable.  Therefore, the Court hereby **GRANTS SUMMARY JUDGMENT** to Defendants on Plaintiff's promissory estoppel claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Hurley's Motion to Dismiss (Doc. 40) is hereby **DENIED**.

Defendants' Motion for Partial Summary Judgment (Doc. 39) as to the breach of contract and

promissory estoppel claims (Counts I and II) is hereby **GRANTED in part** and **DENIED in part**. As to the breach of contract claim (Count I), Defendants' motion is **DENIED**; as to the promissory estoppel claim (Count II), for the reasons mentioned above, Defendants' motion is **GRANTED** and that claim is hereby **DISMISSED**.

       **IT IS SO ORDERED**

                         **s/Kathleen M. O'Malley**
                         **KATHLEEN McDONALD O'MALLEY**
                         **UNITED STATES DISTRICT JUDGE**

**Dated: September 28, 2006**